**HAROLD M. HOFFMAN**
ATTORNEY AND COUNSELOR AT LAW

240 GRAND AVENUE

ENGLEWOOD, NEW JERSEY 07631-4352

Member: New Jersey & New York Bars

Tel  + 1 201 569 0086

Fax  + 1 201 221 7890

hoffman.esq@verizon.net

December 15, 2022     *VIA ECF*

Honorable Michael A. Hammer, U.S.M.J.
United States District Court
 District of New Jersey
50 Walnut Street
Newark, NJ  07101

Re:     *KEEGAN V. SPINOGATTI, et ano.*; 22-cv-04283 (MAH)

Honorable Magistrate Judge Hammer:

I am counsel for Plaintiff in this action. By Orders dated November 22nd and

December 5th (D.E. #30 and #32), the Court directed the parties to meet and confer to

attempt to resolve outstanding discovery disputes. While telephonic conferences took

place among counsel on December 2nd and 13th, discovery disputes remain entirely

unresolved. This letter constitutes the Status Report directed by the Court.

**PLAINTIFF'S POSITION**: In D.E. #30, the Court noted that Plaintiff had failed

clearly to identify the specific third-party discovery sought via court order. Plaintiff

apologizes for the lack of clarity and states as follows: This putative class action alleges

that Defendants marketed and sold an all-natural male enhancement product that was

covertly adulterated with Sildenafil (generic Viagra), a pharmaceutical available by

prescription only. Plaintiff, who suffers from high blood pressure and pre-diabetic high

blood sugar, is medically prohibited from ingesting Sildenafil. Therefore, he purchased

Sustango, believing it to be an all-natural, herbal product. But, as alleged in the Complaint, laboratory analysis showed that Defendants were covertly drugging consumers and putting their health at risk.

Three weeks after suit was filed, a fictitious company, Ultra Supplement LLC, contacted the FDA via email and advised that Sustango, the product at issue in this case, was being recalled, on a nationwide basis. The evidence developed to date, including documentary evidence responsive to subpoenas served by Plaintiff, indicates that this fictitious recall was orchestrated by Defendants, acting anonymously, to offer cover for the fraudulent conduct alleged in the Complaint. The identities of the individuals who orchestrated the Sustango recall – the product at issue in this case – is relevant to the claims at bar and is calculated to lead to the discovery of admissible evidence.

The fictitious company that communicated electronically with the FDA in connection with the Sustango recall used two Gmail addresses which were created mere days before FDA contact took place. Google, which issues Gmail addresses, has advised, in response to Plaintiff's subpoenas, that these Gmail addresses were created by anonymous parties (*i.e.*, first name provided: *Ultra*; family name provided: *Supplement*). Nonetheless, when the anonymous parties electronically agreed to Google's "Terms and Conditions," Google was able to identify and record their IP addresses. IP addresses are unique identifiers assigned to individual customers by companies providing internet

services. The internet service provider associated with the IP addresses identified by Google is Charter Communications. Charter, in response to subpoena, has advised that it has identified the specific customer(s) who were assigned and used the relevant IP addresses. Charter is prepared to produce that information upon receipt of a court order directing them to do so (*see*, D.E. 28). Indeed, it has provided a proposed form of order that it deems applicable in such circumstances (*see*, D.E. 28-3). Identifying the specific individuals who orchestrated the fraudulent Sustango recall is relevant, discoverable information under *Rule* 26(b)(1) Fed. R. Civ. P. Plaintiff seeks a court order (in the form provided by non-party Charter) authorizing Charter to disclose the identities of the individuals associated with the relevant IP addresses. Defendants, for obvious reasons, and despite two telephone conferences among counsel, have refused to consent to its entry. We respectfully ask the Court to grant Plaintiff leave to submit a proposed form of order consistent with the proposed form provided by Charter Communications.

During the meet and confer telephonic discussions, Plaintiff also requested production of documents specified and sought in Plaintiff's document demand served 2 ½ months ago. While these materials (specified below) are plainly relevant and discoverable, Defendants continue to stonewall, agreeing to produce nothing.

**Documents Sought in Plaintiff Document Demand and Withheld by Defendants**:

Defendants' Sustango packaging states that Sustango is "formulated by" Male FX Labs, located in Bangor, Maine. Defendants refused to produce any records relative to Male

FX Labs, claiming that they are not obliged to produce records pertaining to non-parties.

Promax Unlimited is a trade name utilized by Defendants to market Sustango. Jyun Kim and Ultra Supplement LLC are identified in the FDA press release as the parties initiating the FDA recall of Sustango. Defendants have refused to produce records pertaining to Promax, Kim and Ultra Supplement again contending that they are not obliged to produce records pertaining to non-parties.

Defendants have refused to produce any communications with the U.S. Food and Drug Administration concerning the recall of their Sustango product. Defendants have also refused to produce any records concerning the formulation and/or manufacture of Sustango. Nor have they agreed to produce plainly discoverable records concerning the identity of the manufacturer and/or supplier of the Sustango product.

Defendants have refused to produce any records concerning laboratory and/or other testing of Sustango; whether by Defendants, by Amazon which fulfilled consumer orders for the product, or by any third party. (In the FDA press release, consumers are advised – according to fictitious Ultra Supplement – that the recall was induced by Amazon's lab testing of the product). Nor have Defendants produced any records concerning revenues paid to them by Amazon, which fulfilled and delivered consumer orders.

Defendants continue to refuse to produce records concerning the preparation, ingredients and/or formulation of Sustango; nor have they produced records

concerning the supplier of the constituent ingredients in Sustango, including the unlawful Sildenafil adulteration. Nor have they produced payment records for purchase of Sustango from their unidentified supplier. Defendants have declined to produce any documents relevant to its affirmative defenses. (To date, Defendants have produced 9,458 pages consisting almost entirely of redacted Amazon invoices reflecting consumer purchases. Nothing else of relevance has been produced). Nor have they produced names and contact information of individuals with knowledge concerning any aspect of the claims and/or defenses in this action.

Regrettably, meet and confer efforts to date have accomplished nothing. Defendants have opted to stonewall and resist production of discoverable records. Most brazen, is Defendants' refusal to allow for discovery of the identities of those who orchestrated the FDA recall; information readily available to Charter Communications. Therefore, we respectfully request, in addition to entry of the Charter Communications order addressed above, that Defendants be ordered to produce the above-specified, withheld records. If deemed necessary by the Court, and as suggested in D.E. #30, I am prepared to appear in your Honor's courtroom to continue the meet and confer efforts in person until resolution of all outstanding discovery disputes is achieved. That would allow Defendants' counsel, in person, to explain to the Court the unexplainable: why Charter Communications records identifying those who initiated the recall of the product which lies at the very heart of this case, are not discoverable.

**DEFENDANTS' POSITION**:

*Plaintiff's Proposed Order to Charter Communications*

The issue in dispute is whether Defendants will consent to the entry of a proposed Court Order. Defendants did not object or otherwise move to quash the subpoena that was served on Charter Communications. Subsequently, Plaintiff's counsel advised this Court that the FDA has opened an investigation into the recall notice that has become the focus of Plaintiff's ire. In light of that investigation, it would be improper for Defendants' counsel to pre-emptively consent to the entry of the proposed order by this Court, as it relates to an ongoing investigation that Plaintiff's counsel is certain will adversely impact Defendants.

By way of an example, if Defendants were to seek Plaintiff's consent to a proposed order that would prohibit Plaintiff from using the Eurofins Labs Testing Result attached to the Complaint because that lab doesn't normally perform litigation or expert testing and his counsel advised the lab in advance that "I will not be bringing claims, now or in the future, against any of these companies, either individually, or as class claims," Plaintiff's counsel would not be obligated to provide his consent to such an order. There is no requirement that counsel provide consent to a proposed order that counsel does not believe to be in the best interests of their client.

Further, Defendants have previously submitted the legal basis for their opposition to the substance of Plaintiff's underlying requested information to this Court in their correspondence of November 16, 2022 (ECF Doc. #29). Despite that submission, and

requests to Plaintiff's counsel, Plaintiff's counsel continues to provide no legal basis for his right to act privately where the FDA is investigating a matter, other than that he believes the information is discoverable. This has likely caused the confusion in this matter as such a generalized assertion ignores the procedural posture of Plaintiff's request, which was the consent of Defendants' counsel for the entry of a proposed order by this Court.

Respectfully, there is nothing "unexplainable" about Defendants not providing their consent to the entry of the proposed order. Quite the opposite, it has been explained, with legal precedents, to Plaintiff's counsel.

*Defendants' Discovery Responses*

Plaintiff's counsel has undertaken a very specific strategy when it comes to seeking discovery from third parties. He has sought discovery from Amazon, Google and Charter Communications. However, when it comes to other third parties (Male FX Labs, Promax Unlimited, Ultra Supplement LLC, Jyun Kim) he chose to allow the deadline for written discovery to expire without seeking any discovery from them. Instead, he believes that it is Defendants' obligations to produce documents for these specific non-parties to this litigation.

As with Plaintiff's request for Defendants' consent for the entry of a proposed order, Plaintiff has failed to provide a legal basis for his belief that Defendants' are

differently situated than other parties so that their obligations extend beyond what is required by Rule 34.

For example, Plaintiff is convinced that "Promax Unlimited is a trade name utilized by Defendants" when even a brief search online demonstrates that Promax Unlimited is totally unrelated to this litigation:

- https://www.promaxunlimited.com/CompanyHistory.html ("*ProMax has been leading the industry in automotive software for 25 years, and offers the only complete solution for your dealership. From our award-winning Desking and CRM modules, to our industry-first Compliance solutions and Pre-Screen products, to Lead Generation, Inventory, ILM, Dealer Websites, Direct Mail and more, ProMax has all the tools you need to succeed.*")
- https://twitter.com/ProMaxUnlimited
- https://www.facebook.com/ProMaxUnlimited/
- https://www.linkedin.com/products/promax-automotive-software-promax-unlimited/

These websites, some of the top results when a party Googles "Promax Unlimited," demonstrate that the "trade name" is clearly being used by an automotive software company based out of Bettendorf, Iowa, and is unrelated to this litigation.

Respectfully, Defendants have not "refused to produce" records in this matter. Rather, Defendants have complied with their Rule 34 obligations and produced the documents in their possession, custody, or control. Plaintiff's counsel refuses to accept that other documents he is seeking, often from third parties, are not in Defendants' possession, custody, or control and blatantly misrepresents to this court that Defendants produced "redacted Amazon invoices" (a claim that he has not raised with Defendants' counsel prior to his joint status letter). Defendants have not redacted any documents in

their production, but rather, produced the documents that Defendants received from Amazon, the documents in their possession, custody, or control. Plaintiff's attempts to deceive this Court cannot be condoned by Defendants.

Respectfully, Defendants have attempted to resolve the issues presented by Plaintiff's counsel. When Plaintiff's counsel advised that documents were missing from Defendant's production, we reviewed our files, realized there had been a processing error, and produced an additional 3,876 pages of documents. When Plaintiff's counsel sought Defendant's consent for a proposed order, Defendants requested underlying information to consider whether consent could be granted on behalf of our clients. Plaintiff's tactics relative thereto are delineated in our November 16, 2022, correspondence to this Court. There is nothing "brazen" or "unexplainable" in Defendants' refusal to consent to the entry of a proposed order nor are Defendants opting to "stonewall and resist" production of records. Defendants' counsel have already been taunted by Plaintiff's counsel that it will be a short drive for him to the courthouse, while it will require significant travel expense for Defendants' counsel. Plaintiff's discovery tactics seem aimed at forcing that travel because Defendants have the temerity to defend themselves in this litigation.